**NO. CIV-26-1401-D**

---

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

---

**KRISTIN BENNE, as next of kin and**
**Personal Representative of the Estate of**
**CHRISTOPHER KLIEWER, deceased,**

**Plaintiff,**

**v.**

**(1) OKLAHOMA COUNTY CRIMINAL JUSTICE AUTHORITY; and**
**(2) BOARD OF COUNTY COMMISSIONERS FOR OKLAHOMA COUNTY,**

**Defendants,**

---

**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT BY DEFENDANT BOARD OF COUNTY COMMISSIONERS OF OKLAHOMA COUNTY WITH BRIEF IN SUPPORT**

---

VICKI ZEMP BEHENNA
DISTRICT ATTORNEY

/s/ Yolanda Downing
Lisa Erickson Endres, OBA#16647
Yolanda Downing, OBA#18934
Josh Holloway, OBA#31090
Assistant District Attorney
Leadership Square
211 N. Robinson, Suite 700 N
Oklahoma City, OK 73102
Telephone: (405) 713-1600 Phone
Facsimile: (405) 713-1749 Fax
Lisa.Endres@oklahomacounty.org
Yolanda.Downing@oklahomacounty.org
Josh.Holoway@oklahomacounty.org
Attorneys for Board of County Commissioners

**Case No. CIV-26-1401-D**

## TABLE OF CONTENTS


**STATEMENT OF CASE** . . . . . . . . . 1

**STANDARD FOR DISMISSAL** . . . . . . . . 2

**ARGUMENT AND AUTHORITIES** . . . . . . . 4

**PROPOSITION I:**
Plaintiff Lacks Standing to Pursue a Claim
Against the BOCC. . . . . . . . . 4

**PROPOSITION II:**
Plaintiff's Complaint Fails to Meet the Pleading
Standards of Bell Atlantic Corp v. Twombly. . . . . 6

**PROPOSITION III:**
The Complaint Fails to Demonstrate There Knowledge of
Risk of Harm Constituting Deliberate Indifference . . . 8

**PROPOSITION IV:**
The BOCC's Role in Jail Operations is
Restricted to Only Those Duties Prescribed
By Law . . . . . . . . . . 10

**CONCLUSION** . . . . . . . . . 17

**CERTIFICATE OF SERVICE** . . . . . . . 18

# TABLE OF AUTHORITIES

## Case Law

*Archuleta v. McShan*
897 F.2d 495, 497 (10th Cir. 1990). . . . . . . 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) . . . . . . . 3

*Barney v Pulsipher*,
143 F. 3d 1299, 1307 (10th Cir 1988). . . . . . 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) . . . . . . . 3,6

*Berry v City of Muskogee*
900 F.2d 1489, 1498 10th Cir. (1990) . . . . . . 9

*Board of County Comm'rs of Bryan Cnty., Okl. v. Brown*
520 U.S. 397, 404 (1997) . . . . . . . 7,8

*Board of County Commissioners of Sweetwater County v Geringer*
297 F.3d 1108, 1112 (10th Cir. 2002) . . . . . 5

*Brashear v. Bd of Cty. Commiss'r of Okla. Cty*
402 F.Supp3d. 1279, 1283 (W.D. Okla. 2019) . . . . . 16

*Broadrick v. Oklahoma*
413 U.S. 601, 610 (1973) . . . . . . . 5

*Bryson v. City of Okla. City*
627 F. 3d 784, 788 (10th Cir. 2010) . . . . . . 8,15

*Cassie Woodson v Bd. Of County Comm'rs.*
2025 WL 2429686 . . . . . . . . 8

*Conley v Gibson,*
355 U.S. 41, 47 (1957). . . . . . . . 3

*Dubbs v Head Start, Inc.*,
336 F.3d 1194, 1201 (10th Cir. 2003) . . . . . . 2

*Estate of Hocker v. Walsh*,
22 F.3d 995 (10th Cir. 1994). . . . . . . 9

*Gates v Unifield Sch. Dist. No. 449 of Leavenworth Cnty*
996 F2d 1035, 1035, 1041 (10th Cir. 1993) . . . . . . 15

*Maestas v. Lujan*,
351 F.3d 1001, 1013 (10th Cir. 1995) . . . . . 4

*Meade v Grubs*,
841 F.2d 1512, 1528 (10th Cir. 1988) . . . . . . 11, 16

*Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*,
363 F.3d 1072, 1074 (10th Cir. 2004) . . . . . 4

*Monell v. New York City Dept. of Social Serv.*,
436 U.S. 658 (1978) . . . . . . . 7,14

*Moss v. Kopp*,
559 F.3d 1155, 1168 (10th Cir. 2009). . . . . . 14

*Oklahoma City Zoological Trust v State ex rel. Public Employees Relations Bd.*,
2007 OK 21, 158 P.3d 461. . . . . . . . . 12

*Pembaur v. City of Cincinnati*,
475 U.S. 469 (1986) . . . . . . . 15,16

*Powell v. BOCC, et al*,,
CIV-18-294-D [DOC.# 33, Order]. . . . . . . 10

*Port City Props. v. Union Pac. R.R. Co.*,
518 F.3d 1186, 1189 (10th Cir. 2008). . . . . . 4

*Riggs v City of* Alburquerque,
916 F.2d 582, 584 (10th Cir. 1990). . . . . . 5

*Robbins v Oklahoma*,
519 F.3d 1242, 1247 (10th Cir. 2008) . . . . . 3

*Sac and Fox Nation v. Pierce*,
213 F.3d 566, 573 (10th Cir. 2000). . . . . . 5

*Soto for estate of Jimenez v Board of Cnty. Commissioners of Caddo Cnty., Okla*.,
748 F. App'x 790, 794 (10th Cir. 2018). . . . . . 8

*State ex rel. Williamson v. Garrison*,
1959 OK 260, 348 P.2d 859, 863 . . . . . . 12,13

*Summers v Earth Island Inst*,
555 U.S. 488, 492-93(2009) . . . . . 5

*Sutton v. Utah State School for the Deaf & Blind*,
173 F.3d 1226 (10th Cir. 1999) . . . . . . . 2

*Thao v. Grady Cnty. Crim. Just. Auth*,
159 F.4th 1214, 1226–27 (10th Cir. 2025) . . . . 15

*Tulsa County Deputy Sheriff's F.O.P. v Bd of County Comm'rs*
996 F.2d 1035 (10th Cir. 1993) . . . . . . 24

*Utah Ass'n of Counties v Bush*,
455 F3d 1094, 1099 (10th Cir. 2006) . . . . . 4

*Waller v. City & Cnty. of Denver*,
932 F.3d 1277, 1283 (10th Cir. 2019). . . . . . 15

*Yoder v. Honeywell, Inc.*,
104 F.3d 1215, 1224 (10th Cir. 1997) . . . . . . 2

**Statutory Provisions and Rules and Attorney General Opinions**

Okla. Stat. tit. 19, § 339 . . . . . . . . 17

Okla. Stat. tit. 19, § 513 . . . . . . . . 11

Okla. Stat. tit. 19, § 547 . . . . . . . . 11

Okla. Stat. tit. 19, § 904.1-904.7 . . . . . . . 12

Okla. Stat. tit. 57, § 41 . . . . . . . . 11

Okla. Stat. tit. 57, § 51 . . . . . . . . 11

Okla. Stat. tit. 60, § 176.1 . . . . . . . . 12

Okla. Stat. tit. 60, § 176-180.4 . . . . . . . 12-13

Fed. R. Civ. P. 8 . . . . . . . . . 3,6

Fed. R. Civ. P. 12 . . . . . . . . . 1,2,4,6

Fed. R. Civ. P. 17 . . . . . . . . . 1

Fed. R. Evidence 201 (footnote). . . . . . . . 13

2004 OK AG 17 . . . . . . . . . 13

2007 OK AG 35 . . . . . . . . . 11

2024 OK AG 4 . . . . . . . . . 12

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KRISTIN BENNE, as next of kin and Personal, Representative of the Estate of CHRISTOPHER KLIEWER, deceased<br>Plaintiff, | ) | |
| v. | ) | Case No. CIV-26-1401-D |
| (1) OKLAHOMA COUNTY CRIMINAL JUSTICE AUTHORITY; and<br>(2) BOARD OF COUNTY COMMISSIONERS FOR OKLAHOMA COUNTY;<br>Defendants. | ) | |

**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT BY DEFENDANT BOARD OF COUNTY COMMISSIONERS FOR OKLAHOMA COUNTY WITH BRIEF IN SUPPORT**

COMES NOW, Defendant Board of County Commissioners of Oklahoma County (hereinafter "BOCC") and respectfully moves to dismiss this action pursuant to Rule 17 (c)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for the reason that the Complaint on file herein fails to state a claim upon which relief can be granted.

**STATEMENT OF CASE**

Plaintiff, Christopher Kliewer ("Kliewer") was a pretrial detainee of the Oklahoma County Detention Center ("OCDC" or "Jail") who died of suicide on June 9, 2022 after he was arrested on June 8, 2022 for Domestic Assault and Battery; Kidnapping; Domestic Strangulation; Rape by Instrumentation; and First Degree Rape.

The Amended Complaint was filed by Kristin Benne, who filed this action as next kin and Personal Representative of the Estate of Christopher Kliewer, Deceased. [Doc. 8, at

page 1]. According to the amended complaint, Christopher Kliewer was booked into the Oklahoma County Jail as a pretrial detainee in the early morning hours of June 8, 2022. *Id.* The night before he was booked into the Jail, Mr. Kliewer communicated to his ex-girlfriend that he intended to kill himself by mixing pills and alcohol. *Id.* During Kliewer's medical intake, he reported that he was diagnosed with bipolar disorder, had cancer, and took medication for mental illness. *Id.* The Amended Complaint alleges Klewer was placed on Pod C on the fourth floor, which is general population. *Id* at 4. On June 9, 2022, at approximately 5:50 a.m., detention officer Daniel Narty discovered Christopher Klewer deceased in his cell. *Id.* The Office of the Chief Medical examiner determined Mr. Kliewer's cause of death to be asphyxia ligature hanging and his manner of death to be suicide. *Id.* According to the Complaint, the last recorded sight check, or visual observation, of inmates on Pod C of the fourth floor had occurred approximately ten hours before the discovery of Mr. Kliewer's body.

## STANDARD FOR DISMISSAL

A complaint should be dismissed for failure to state a claim upon which relief can be granted when "it appears that the plaintiff can prove no set of facts to support that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff." *Dubbs v Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir. 1997)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's

complaint alone is legally sufficient to state a claim for which relief may be granted." *Id.* (quoting *Sutton v. Utah State School for the Deaf & Blind*, 173 F.3d 1226 (10th Cir. 1999)).

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing. . . entitle[ment] to relief." The required "short and plain statement" must provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007) (quoting Conley v Gibson,* 355 U.S. 41*,* 47 (1957*) (*overruled on other grounds*, Twombly,* 550 U.S. at 562-63)). To show an "entitlement to relief" the plaintiff must plead "more than label and conclusions." *Twombly*, 550 U.S. at 555. The initial pleading must contain "[f]actual allegations [which are sufficient] to raise a right to relief above the speculative level." *Id*. in other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face" not just conceivable. *Id. at 570.* The pleading standard applies to require the pleading of sufficient facts that would justify relief from each defendant named.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Plaintiff must do more than make allegations of such a broad scope that they "encompass a wide swath of conduct, much of it innocent." *Robbins v Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Plausibility does not mean "likely to be true;" it means that the allegations must be enough that if assumed to be true the plaintiff plausibly, not merely speculatively, has a claim for relief. *Twombly*, 550 U.S. at 565, n. 10).

## ARGUMENT AND AUTHORITIES

The BOCC denies that Plaintiff is entitled to any relief from this Defendant. Specifically, Defendant BOCC denies that Plaintiff's allegations establish Plaintiff's standing to bring suit and otherwise fails to state a plausible claim against the Board pursuant to Section 1983. As such, Defendant BOCC is entitled to dismissal pursuant to Rule 12 of the Federal Rules of Civil Procedure.

### PROPOSITION I PLAINTIFF LACKS STANDING TO PURSUE A CLAIM AGAINST THE BOCC

Plaintiff lacks standing to bring these claims against the BOCC. "Standing is determined at of the time the action is brought." *Utah Ass'n of Counties v Bush,* 455 F3d 1094, 1099 (10th Cir. 2006). Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a claim for relief on the grounds that the court lacks jurisdiction. Fed. R. Civ. P. 12(b)(1). Rule 12 (b)(1) challenges may take one of two different forms. "The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 1995)). In either instance, the plaintiff bears the burden of establishing subject matter jurisdiction. *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

"To satisfy the standing requirement, plaintiffs must show that they "personally [have] suffered some actual or threatened injury as a result of the putatively illegal conduct

of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Riggs v City of* Alburquerque, 916 F.2d 582, 584 (10th Cir. 1990). It is "well-settled principle that a section 1983 claim must be based on the violation of plaintiff's personal rights, and not the rights of someone else." *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990). This principal is founded on the notion that "constitutional rights are personal and may not be asserted vicariously." *Broadrick v. Oklahoma,* 413 U.S. 601, 610 (1973). If a party lacks constitutional standing, federal courts lack jurisdiction. *Summers v Earth Island Inst.,* 555 U.S. 488, 492-93(2009). Federal Rule of Civil Procedure 17 governs a party's ability to sue and be sued. Rule 17(a) requires that all actions "be prosecuted in the name of the real party in interest." Fed. R.Civ.P.17(a).

In addition to Article III standing, a plaintiff must have prudential standing. This means injury to their own rights rather than those belonging to third parties. *Sac and Fox Nation v. Pierce,* 213 F.3d 566, 573 (10th Cir. 2000). Because Christopher Klewer, who was the real party in interest has passed away, he cannot pursue this action, and thus the Court must look to the governing substantive law to determine who is the appropriate real party in interest. In a § 1983 action, a Complaint may be brought on behalf of the decedent's estate or by its personal representative. In the present case, Benne lacks prudential standing to sue on behalf of her father because she has not been made the estate's representative.

Prudential standing includes the requirement that a plaintiff must assert its own rights rather than those belonging to others. *Board of County Commissioners of Sweetwater County v Geringer,* 297 F.3d 1108, 1112 (10th Cir. 2002). In the case of *Davis v. Hudson*

*Refinery*, (498 Fed. App.'x 779 (10th Cir. 2012) the case was dismissed due to lack of prudential standing to bring a civil rights action on behalf of estates of his deceased relatives, where inmate did not establish that he was executor for estates or in any other way authorized to represent estates" and thus the complaint fails to state a claim for which relief may be granted as to these Plaintiffs. In this case, the caption identifies Benne as the Personal Representative of her father's estate, without any reference or evidence that she has indeed been appointed as the Personal Representative. The Court may take judicial notice of OSCN court records, that a probate act has not been filed and not . Therefore, this Complaint must be dismissed due to Plaintiff's clear lack of standing required by law.

**<u>PROPOSITION II</u>** **PLAINTIFF'S COMPLAINT FAILS TO MEET THE PLEADING STANDARDS OF *BELL ATLANTIC CORP. V. TWOMBLY***

"[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that the "'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief'." *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007).* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do. *Id.* at 555.

Here, the Complaint does not assert any specific cause of action against BOCC. Moreover, BOCC is barely mentioned in the Complaint, with the only substantive statement regarding the BOCC being on page 2 ¶ 3 of the Complaint when describing the

parties. The Complaint also mentions the BOCC on page 8-9 ¶ 41 when discussing BOCC entering a Memorandum of Understanding with the federal government in 2009. Additionally, BOCC was mentioned on pages 13 ¶ 69 and 14 ¶¶ 71-72 in combination with OCCJA when discussing the causes of action.

Plaintiff's pleadings fail to identify a policy, practice, or custom of the Board of County Commissioners of Oklahoma County ("BOCC") which caused Plaintiff's injury as required by *Monell*. *Monell v. New York City Dept. of Social Serv.,* 436 U.S. 658 (1978). Plaintiff's offers only the generalized and conclusory statements against BOCC as stated above. Plaintiff's allegations against the OCCJA and BOCC are combined throughout the Complaint and fail to distinguish that the BOCC and OCCJA are, as a matter of law, separate legal entities whose liability is based on separate and distinct statutory constitutional duties owed under Oklahoma law.

To establish municipal liability on behalf of the BOCC, the plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Id.* at 694. Identifying a policy and custom of OCCJA and imputing that upon the BOCC is not proper because each entity has its own customs, policies and duties when it comes to operating and funding the jail. If an official policy of the BOCC cannot be identified, an informal custom could subject municipality of the BOCC of liability so long as it is widespread enough to have the force of law. See *Bd of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). However again, any custom or policy of the BOCC must be the driving force that caused the constitutional injury. Without facts that can show a nexus between the constitutional injury and a BOCC policy or custom, the claim fails.

Likewise, a policy or custom may include "the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused." *Bryson v. City of Okla. City*, 627 F. 3d 784, 788 (10th Cir. 2010). The deliberate indifference standard may be satisfied when the municipality owes that duty and has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. *Id.* at 789. Regardless of the type of policy or custom relied upon, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Brown* at 404.

In a jail case alleging municipal liability, this Court has held that "a § 1983 municipal liability claim must include factual allegations that a particular municipal custom or policy was the moving force behind the constitutional injury in order to withstand a Rule 12 (b)(6) dismissal." *Cassie Woodson v Bd. Of County Comm'rs*., 2025 WL 2429686 citing *Soto for estate of Jimenez v Board of Cnty. Commissioners of Caddo Cnty., Okla*., 748 F. App'x 790, 794 (10th Cir. 2018) Like the *Woodson* case, the factual allegations alleged in the Complaint were against OCCJA and not the BOCC, which is what warranted dismissal against the BOCC in that case. Here, the Plaintiff's Complaint had to be dismissed against BOCC because it suffers the same procedural and pleading defects that warranted this Court's dismissal in *Woodson*.

**PROPOSITION III** **THE COMPLAINT FAILS TO DEMONSTRATE THERE WAS RISK OF HARM CONSTITUTING DELIBERATE INDIFFERENCE**

A plaintiff must show (1) "actual knowledge of the specific risk of harm [to the detainee]…or that the risk was so substantial or pervasive that knowledge can be inferred;"(2)"fail[ure]to take reasonable measures to avert the harm;" and (3) that "failure to take such measures in light of [the] knowledge, actual or inferred, justifies liability for the attendant consequences of [the] conduct, even though unintended." *Estate of Hocker v Walsh,* 22 F.3d 995, 1000 (10th Cir. 1994) Citing *Berry v City of Muskogee,* 900 F.2d 1489, 1498 10th Cir. (1990)). The Amended Complaint does not allege any facts that any member of the BOCC had knowledge of the specific risk that Mr. Kliewer would attempt suicide or cite to any policy, custom or duty of the BOCC to obtain knowledge or act to prevent this kind of harm based on the role and duty of the BOCC to operate the jail as outlined in the statutes and Trust Indenture that govern jail operations.

The Petition does not indicate that the risk of suicide was so substantial or pervasive that knowledge could be inferred to the OCCJA jail employees, let alone the BOCC, whose only statutory obligation for jai operations is funding. Other than the allegation contained in the Complaint before this Court that Mr. Kliewer had communicated to his ex-girlfriend (the victim) multiple times prior to his incarceration that he intended to commit suicide because she broke up with him, these statements to the girlfriend prior to his assault upon her cannot be considered knowledge of a continued suicide risk. First, Mr. Kliewer's threats to his girlfriend to kill himself by ingesting pills and alcohol did not occur; instead, when she showed up, he raped and assaulted her instead of inflicting self-harm. Secondly, there are no factual allegations in the Complaint that show that jail staff, let alone the

BOCC, was told or made aware of Mr. Kliewer's prior threats to commit suicide because Mr. Kliewer during his medical intake did not report his prior suicide threats or express suicidal idealizations during his medical intake with jail staff just hours prior to his death. The suicide threats made to his victim prior to her assault alone is not a credible warning that can be imputed upon the jail.

In *Powell v. BOCC*, *et al*, CIV-18-294-D [DOC.# 33, Order], an inmate with a mental condition attempted to commit suicide after making a phone call to her mom from jail stating she was going to kill herself. There was no evidence that the call was reported to jail staff. In *Powell,* the Court found that a mental condition and a recorded phone call to the inmate's mother where she talked about suicide that was not specifically reported to any jail staff member, falls short of the kind of knowledge and deliberate indifference required to state a constitutional rights violation under Section 1983. Here, there is no evidence that any jail staff member had any knowledge about Kliewer's suicide threats he made to his ex-girlfriend to lure her to him prior to her assault because he did not report it to medical staff. Like in *Powell*, dismissal is warranted due to lack of actual knowledge and the requisite deliberate indifference to a known risk that is needed to impose constitutional liability. In both this case and *Powell,* the mere possibility that a suicidal threat could have been discovered by jail staff and was not is not sufficient to impute knowledge, which is why dismissal is warranted.

**PROPOSITION IV** **THE BOCC'S ROLE IN JAIL OPERATIONS IS RESTRICTED TO ONLY THOSE DUTIES PRESCRIBED BY LAW**

The BOCC is not asking this Court to relieve them of their Constitutional duties under the law. However, the BOCC is requesting this Court to recognize the nature and scope of BOCC's role and to hold the BOCC accountable for only those duties imposed upon the BOCC under the Constitution and laws of Oklahoma.

Under Oklahoma law, a county is required to either maintain or have access to a jail for housing prisoners. *See* 57 Okla. § 41. When a county elects to maintain a county jail of its own, the law provides for three different options from which the county may choose to operate a county jail – namely, the county sheriff, a public trust, or a private contractor retained by the county. 2007 OK AG 35, ¶ 2. When there is no public trust, Oklahoma law provides that operational jail duties would fall on the Sheriff. *See* 19 Okla. Stat. § 513 (Sheriff to have charge and custody of the jail; 19 Okla. Stat. § 547 (Sheriff to appoint and remove deputies and detention officers); 19 Okla. Stat § 547 (Sheriff to have charge and custody for jail and persons confined therein. Historically the BOCC has not been held liable for the operational failures of the County Sheriff. *Meade v Grubs* 841 F.2d 1512, 1517. The mere creation of a public trust to assume operational duties of the Sheriff does not change the scope of the BOCC's statutory duties nor increase its constitutional liability or exposure under Section 1983.

The duties of the BOCC as described in Oklahoma statute are as follows: "at the expense of the county, to provide "suitable means" for warming the county jail and its cells or apartments, beds and bedding and such other permanent fixtures and to make such repairs as may be prescribed by the district judge or the State Department of Health." 57 O.S. § 51. "The term 'means' is defined and understood as "available resources for

payment" and "something that helps attain an end." Means, BLACK'S LAW DICTIONARY (8th ed. 2004). Accordingly, section 51 vests in the county commissioners the duty to provide suitable means (i.e., financial resources) for the warming of the county jail, its cells, beds and bedding, and such other permanent fixtures and repairs prescribed by a district court judge or the Department of Health." 2024 OK AG 4 ¶ 10.

"[F]or all purposes of Oklahoma law [a public trust] [e]xist as a legal entity separate and distinct from the settlor and from the governmental entity that is its beneficiary." 60 Okla. § 176.1(A)(2). The plain language in this case is clear and controlling**.** In *Oklahoma City Zoological Trust v State ex rel. Public Employees Relations Bd.,* 2007 OK 21, 158 P.3d 461, the Oklahoma Supreme Court ruled that "[a public] trust is a legal entity separate and apart from the Sate and the political subdivisions of the State…" (quoting *McGee v. Alexander*, 2001 OK 78, 37 P.3d 800, 807). Similar to *OKC Zoo*, here BOCC maintains absolutely no *de jure* control over the operations of the OCCJA. *Id* at 465. Furthermore, "[t]he fact that a public trust acts on behalf of its beneficiary entity and is "the regularly constituted authority of the beneficiary for the performance of the functions for which the trust shall have been created ***does not cause the trust to merge with its beneficiary***." *State ex rel. Williamson v. Garrison*, 1959 OK 260, 348 P.2d 859, 863 (*emphasis added*).

Public trusts in Oklahoma are legal entities allowed and created pursuant to state statute and can be formed in Oklahoma for the purpose of contracting, managing or operating a county jail facility under either 60 Okla. §§ 176-180.4 or 19 Okla. §§ 904.1-904.7. In this case, OCCJA is a trust created on May 22, 2019, under 60 Okla. §§ 176-

180.4 whose duties and responsibilities are governed by its Trust Indenture[1]. In either event, "[t]he trust steps into the shoes of the county and the sheriff for the purpose of operating the county jail" 2004 OK AG 17; *See Tulsa County Deputy Sheriff's F.O.P. v Bd of County Comm'rs* 959 P.2d 979, 982 (Okla. 1998).

To the extent Plaintiff relies on the 2008 DOJ Report to establish a BOCC policy and custom, this Report was created before the OCCJA was formed. Therefore, the report is not factually relevant, nor can it be used to demonstrate a widespread custom or policy of OCCJA jail operations because the trust did not even exist until May 22, 2019. Once it became operable in 2020, the operation of the jail by the OCCJA instead of the Oklahoma County Sheriff, broke the causal nexus, making this 2008 DOJ Report outdated and obsolete as applied to the OCCJA and the BOCC since the creation and new operating procedures of the jail under OCCJA must, under Oklahoma law, does not allow for a merger of interests between the Trust and its Beneficiary. *Williamson v. Garrison*, 348 P.2d at 863.

Mr. Kliewer died on June 9, 2022, within hours of booking. In June of 2022, OCCJA was operating the jail under the newly formed Jail Trust Indenture that specifically

---

[1] Rule 201 of the Federal Rules of Evidence allows a court to, at any stage of the proceeding, take notice of "adjudicative" . . . facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). Courts may take judicial notice of public records. *Fuqua v. Santa Fe Cnty. Sheriff's Off.,* 157 F.4th 1288, 1298 (10th Cir. 2025). The Trust Indenture is a public record produced by a public body (BOCC) and a County Record maintained with the Oklahoma Secretary of State (https://www.sos.ok.gov/corp/order/orderEntry.aspx?fo=5012760636).

describes the BOCC as the beneficiary and limits its operational oversight to the duty to provide funding. Public records from the Oklahoma County Detention Center[2] indicate that during the fiscal year 2021/2022, the OCCJA reported a carryover from fiscal year of $487,170.00 which represents funds provided by the County to OCCJA that were not expended in the prior fiscal year that were available or jail expenditure in fiscal year 2021/2022. Even if the 2008 DOJ Report and 2009 MOU between the BOCC and Department of Justice could somehow circumvent the rules governing the formation and operation of public trusts as being separate from their public beneficiary, the reported surplus breaks the causal nexus of underfunding, demonstrating fulfilment of BOCC's duty to fund the jail.

A governmental entity can only be held liable for § 1983 violations stemming from its own "unconstitutional or illegal policies," not for the unconstitutional or illegal policies of other entities. *Barney v Pulsipher*, 143 F. 3d 1299, 1307 (10th Cir 1988) (citing *Monell v New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978)). Under *Monell v. Dept. of Soc. Servs. of N.Y.*, 436 U.S. 658, 690-691 (1978), a Plaintiff may sue local governing bodies directly for constitutional violations pursuant to that particular body's polices. The Tenth Circuit has long held that:

> To establish a claim for damages under § 1983 against municipal entities or local government bodies, the plaintiff must prove (1) the entity executed a policy or custom (2) that caused the plaintiff to suffer deprivation of constitutional or other federal rights." *Moss v. Kopp*, 559 F.3d 1155, 1168 (10th Cir. 2009). In other words, "a municipality cannot be held liable under

[2] *See* 2022 Annual Report for the Oklahoma County Detention Center is a public record produced by a public body (OCCJA) and a County Record maintained with the Oklahoma County Clerk (2022-4200 - 7. 2022 OCDC Annual Report).

> § 1983 on a *respondeat superior* theory." *Id.* (quoting *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 166, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)).

*Thao v. Grady Cnty. Crim. Just. Auth.,* 159 F.4th 1214, 1226–27 (10th Cir. 2025). A municipal policy or custom takes one of these forms:

> (1) a formal regulation or policy statement;
> (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law;
> (3) the decisions of employees with final policymaking authority;
> (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or
> (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Id. citing Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (citation omitted). After establishing such a policy or custom, a plaintiff must demonstrate the causation element, that is, "a direct causal link between the policy or custom and the injury alleged." *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (*citation omitted*). Merely stating that there is a custom is not sufficient.

Section 1983 municipal liability may only be brought if plaintiff can demonstrate that the entity's "policy or custom" caused the constitutional tort. *Pembaur v City of Cincinnati*, 475 US 469, 479-480 (1986). To establish the existence of a "custom" the plaintiff must demonstrate: (1) a continuing, widespread, and persistent pattern of misconduct; (2) deliberate indifference or tacit approval of misconduct by policy-making officials; and (3) injury to the plaintiff as a result of the custom. *Gates v Unifield Sch. Dist. No. 449 of Leavenworth Cnty.*, 996 F2d 1035, 1035, 1041 (10th Cir. 1993). Municipal

liability may also be imposed if the action is taken pursuant to a "policy provided the plaintiff demonstrates: (1) a policy adopted by the municipality or officials responsible under the law for making policy in the area; or (2) a decision made by an official with final policy-making authority within the area. *Pembaur*, 475 US at 480-481. Because the BOCC's duties under Oklahoma law to operate the jail are limited to financial support, Plaintiff's allegations even when presumed to be true for the purposes of dismissal, do not give rise to a claim against the BOCC because they lack sufficient facts that support a funding deficiency as the "driving" force responsible for the suicide death in this case.

Additionally, the plaintiff must establish the existence of a custom or policy to "distinguish acts of the municipality from acts of employees of the municipality and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur*, 475 at 479. In the Amended Complaint under "The Parties" Benne states that OCCJA was delegated responsibility for developing **policies, practices, and procedures governing the administration and operation of the jail**." *See* Doc. 8, at ¶ 2 [Emphasis added]. Because the BOCC has no statutory authority to act in jail operations, Plaintiff cannot identify a single policy or custom of the BOCC that is attributable to jail operations, which is fatal to satisfying the elements for a valid municipal liability claim. *See Brashear v. Bd of Cty. Commiss'r of Okla. Cty,* 402 F.Supp3d. 1279, 1283 (W.D. Okla. 2019) citing *Meade v. Grubbs,* 841 F.2d 1512, 1528 (10th Cir. 1988), *abrogated in part on other grounds*.

Under these circumstances, Plaintiff's constitutional claims must be dismissed against defendant BOCC for failure to state a claim upon which relief may be granted.

Given the limited sovereign authority vested in counties and county officials by the Legislature, in a §1983 action it is crucial for the plaintiff to identify which official exercises policy making authority in the area out of which his complaint arises. Plaintiff must establish that the alleged injury was fairly traceable to conduct of the BOCC and not some other actor. While the Amended Complaint alleges the BOCC owes some financial responsibility for the operation of the Oklahoma County Detention Center, she has failed to explain how BOCC's policies have a causal connection to the injuries in this particular case. If the BOCC has no authority to act, no injury of Plaintiff can be shown to be traceable to the policies, acts or omissions of BOCC. *See* 19 O.S. § 339. Therefore, this Amended Complaint against BOCC must be dismissed as a matter of law.

**CONCLUSION**

WHEREFORE, the Defendant Board of County Commissions of Oklahoma County respectfully prays that this Court grants its Motion to Dismiss the Complaint with prejudice.

Respectfully Submitted,

VICKI ZEMP BEHENNA
DISTRICT ATTORNEY

_/s/ Yolanda Downing
Lisa Erickson Endres, OBA#16647
Yolanda Downing, OBA#18934
Josh Holloway, OBA#31090
Assistant District Attorneys
Leadership Square
211 N. Robinson, Suite 700 N
Oklahoma City, OK 73102
Telephone: (405) 713-1600

Facsimile: (405) 235-1567
Lisa.Endres@oklahomacounty.org
Yolanda.Downing@oklahomacounty.org
Josh.Holoway@oklahomacounty.org

CERTIFICATE OF SERVICE

The foregoing was delivered using the ECF System for filing, and based upon the records on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to all counsel of record:

Cameron Spradling
Katelyn Elrod
Cameron Spradling, PLLC
500 North Walker Ave, Suite 100
Oklahoma City, OK 73102
(405) 605-0610
cameron@cameronspradling.com
katelyn@cameronspradling.com
Attorneys for Plaintiff

Aaron Etherington
Carri A. Remillard
201 North Shartel Ave.
Oklahoma City, OK 73102
(405) 504-6964
aaron.etherington@okcountydc.net
carri.remillard@okcountydc.net
Attorneys for Oklahoma County Criminal
Justice Authority

/s/ Yolanda Downing